Because of Judge Farber's discriminative behavior I wound up representing myself at trial with no medical defense. Judge Farber even refused to do any neurological or psychiatric tests before allowing me to represent myself at trial.

Judge Patricia Nuñez, the trial court residing judge showed the same type of discrimination. Judge Nuñez also refused to wait till my doctor came back from vacation as well as refusing to appoint an expert witness. Enclosed are documents from the Epilepsy Foundation, which she read and still refused to allow them into evidence along with a mountain of medical records dating back to 1997 as proof of a previous existing disability. Judge Nuñez allowed in one (911) report only because the A.D.A. John Chananie had a witness who worked as an EMT ambulance worker. The EMT worker was no expert who had never heard of psychomotor or fura seizures, so he was an inadequate witness from the start. Because of Judge Nuñez' discrimination my defense being a medical one, I was left without proof of what really happened. She also broke fundamental law and protocol in an attempt to minimize my condition again showing prejudice and discrimination, violating mandates made by the Congressional House of Representatives when dealing with cases that involve people with disabilities such as epilepsy.

Due to the prejudice and discrimination of all of the above, I have been convicted for having a seizure; and even though medical records prove no injury, I was still sentenced to 5 years in jail and 5 years post conviction or parole. In these events I have lost my apartment and everything in it; my furniture, T.V.'s, computers, my piano, an irreplaceable vinyl record collection and $14,000 cash of retroactive monies given to me by SSI. My life has been devastated and will never be the same. I had lived there for over 20 years of my life. My building was also my safety net since everyone who knew me kept me safe and knew of my existing condition. (Irreplaceable situation)

The events also resulted in me being assaulted by corrections officers who fractured vertibraes in my neck as well as back injury, as a record of it is at Bellevue Hospital, from the day of the event. So not only have I lost everything that I have owned for many years, I also now live in constant pain unable to sleep comfortably and unable to sit down for long periods of time. From time to time I am unable to move my head from side to side as my neck now makes a scraping noise of bone against bone when I can move my head from side to side.

I am making a claim for $2.5 million dollars for all of my losses and recent injuries; also for acts of discrimination and negligence by the following public agencies for the people of the state of New York:

The New York Police Department, the District Attorneys Office of New York, and the New York Judicial Committee. My claim is against the people of the State of New York. Due to my continued situation of negligence on a daily basis by the New York State Department of Corrections which is inducing more seizures than before by poor medical practice and other stressful situations, such as forced labor issues of which I am incapable and the punishments for non-compliance, physical and mental abuse which threaten my life on a daily basis. Because of this my claim appreciates every day at a rate of $300 dollars a day. Again, these laws against discrimination have been established and enforced by Congress' House of Representatives for compliance with the Americans with Disabilities Act (ADA).

Also enclosed are the details to the unfinished claim from injuries sustained from officers at Corrections Facility in Manhattan Detention Center at 125 White Street NYC. 10013. It remains incomplete due to remedy exhaustion and I would add it to this claim. Details are enclosed.

*[Handwritten at top: FEDERAL LAW FROM CONGRESSIONAL HOUSE OF REPRESENTATIVES FOR AMERICANS WITH DISABILITIES ACT (ADA)]*

**EPILEPSY FOUNDATION®**
*Not another moment lost to seizures* ™

8301 Professional Place, Landover, MD 20785

Seizure Disorders Facts and Issues (SDFI)
©2007 Epilepsy Foundation
Landover, MD

## Criminal Justice:
## Arrest For Seizure-Related Behavior

Seizures are caused by a sudden malfunction in the electrical system of the brain, which has the effect of swamping part or all of the brain with an electrical overload. This in turn produces temporary changes in behavior and/or consciousness. Seizures may be convulsive (that is, involve spasms or jerking motions) or non-convulsive.

A non-convulsive seizure with altered awareness and automatic behavior is called a complex partial seizure, or a psychomotor or temporal lobe seizure. A major problem in the public handling of complex partial seizures, the most common type of seizure, is recognition of the symptoms. The unusual behavior associated with complex partial seizures is often misinterpreted as stemming from intoxication or mental illness. It is this type of seizure that is also associated with symptoms that may be erroneously perceived as aggression. Lack of public understanding has resulted in people with complex partial seizures being unfairly arrested (and sometimes seriously injured in the process) and prosecuted based on perceived intoxication, violence, disorderly conduct or indecent exposure – all because of involuntary actions produced by seizures.

### Complex Partial Seizures and Accusations of Criminal Conduct

*[Handwritten: ← PLEASE READ]*

Typically, a complex partial seizure starts with a blank stare and loss of contact with surroundings. This is often followed by chewing movements, picking at or fumbling with clothing, mumbling and performing simple, unorganized movements over and over again. Sometimes people wander around, and in rare cases, a person might try to undress during a seizure, or become very agitated, screaming, running or making flailing movements with his arms or bicycling movements with his legs. Actions and movements

*[Handwritten: PLEASE CONTINUE →]*

are typically unorganized, confused and unfocused (that is, not directed at a specific person or object) during a complex partial seizure.

During these episodes the person is on "automatic pilot" so far as his actions are concerned, is totally unaware of what is happening, and, when consciousness returns, will have no memory of what occurred during the seizure. After a few minutes, natural systems in the brain subdue the electrical overload which caused the seizure, and consciousness returns. The time after a seizure is called the *postictal* or *post-ictal* period and this recovery period can last minutes to an hour or more. During this time a person is typically dazed and fatigued, and gradually becomes aware of surroundings as normal brain function returns. During this period a person is easily frightened, upset and unable to communicate effectively and may become belligerent or aggressive, especially when approached, as he or she may perceive this as a threat.

A cardinal rule in the handling of any seizure is that the person should not be restrained in any way, unless it is essential for his personal safety or the safety of others. Restraint of persons during or soon after a seizure may exacerbate or precipitate combativeness – the opposite of the intended result. As one's resistance to restraint increases, the threat to his life similarly increases. Restraining someone face-down and/or with his arms restricted behind his back is especially dangerous.

While in an altered state of awareness, an individual with complex-partial seizures may commit an undirected act which may be perceived as "criminal" – for instance, picking up objects, grabbing someone close by, and opening or rattling doors -- that may lead to arrest and prosecution for such crimes as shoplifting, assault or disorderly conduct. These behaviors are usually stereotypical, that is, the person does something similar every time he has a seizure, and the individual usually has impaired consciousness so he cannot control the movements or behaviors.

Whether an individual's alleged criminal behavior was seizure-related is a question that can best be answered by the neurologist who is most familiar with that individual's seizure characteristics. Witnesses' reports of his exact behavior (as well as descriptions of his general behavior during a seizure) will also be very helpful in determining whether

*PLEASE CONTINUE →*
*(FEDERAL LAW NEXT PAGE)*

he was in the midst of a seizure or in a postictal state. An expert familiar with the individual and his seizures will be crucial to defend against any criminal charges.

Note that some criminal defendants have found it useful to present testimony or a written letter from their treating neurologist that describes their seizure history and pattern, particularly if they typically display behavior during a seizure similar to that for which they were criminally charged. Moreover, if such documentation does not already exist, it might be useful to obtain a closed-circuit video recording of the individual actually having a seizure; during this process, an EEG would be used to confirm the seizure occurrence and the video would document the behavior pattern.

[Handwritten margin note: FEDERAL LAW OF MY DISABILITY OF EPILEPSY]

As noted above, there have been many instances in which persons having seizures have been arrested and charged with such crimes as drunk and disorderly conduct, resisting arrest, unlawful entry, even assault on a police officer. The Epilepsy Foundation brought this serious problem – and the need for training in seizure recognition and management -- to the attention of the House of Representatives Judiciary Committee during hearings on the Americans with Disabilities Act (ADA). In its final report, the Committee stated:

*In order to comply with the non-discrimination mandate, it is often necessary to provide training to public employees about disability. For example, persons who have epilepsy, and a variety of other disabilities, are frequently inappropriately arrested and jailed because police officers have not received proper training in the recognition of and aid for seizures. Often, after being arrested, they are deprived of medications while in jail, resulting in further seizures. Such discriminatory treatment based on disability can be avoided by proper training.*

<u>Training on Seizure Recognition and Response</u>

Detailed information on seizure recognition and management is contained in a training curriculum and an accompanying video which the Epilepsy Foundation developed for police nationwide on the issue. The materials – "Take Another Look: Police Response to Seizures and Epilepsy" -- were developed under a grant from the Department of Justice, as part of a larger educational project to promote compliance with the ADA, and distributed to over 20,000 police departments nationwide. The Foundation is in the

process of developing an updated training curriculum for police and other first responders on seizure recognition and management. For information on obtaining the current Foundation training curriculum and video, call 1-800-332-1000. First responder agencies are also encouraged to contact the Foundation affiliate serving their community to request that the agency provide training. (Locally-based Epilepsy Foundations provide information and referral services tailored to their communities, sponsor professional education seminars for allied health professionals and educators, mobilize individuals to serve as advocates or expert consultants on medical issues, and participate in public education campaigns.) The contact information for the affiliate serving your area can be found on our Web site: http://www.epilepsyfoundation.org/aboutus/AffiliateLookup.cfm

<u>Resources to Assist with Criminal Defense Matters</u>

The Epilepsy Foundation's Jeanne A. Carpenter Epilepsy Legal Defense Fund may have resources available that could be helpful to defense attorneys in responding to criminal charges. If you have an attorney, he may contact the Fund (at 301-459-3700 or legalrights@efa.org) for assistance. More information about the Fund is available at www.epilepsylegal.org. In addition, your attorney can contact the local affiliate of the Epilepsy Foundation, which may be able to assist in locating a local expert if your own physician is unable to provide the necessary information regarding your condition.

Attorneys and other advocates handling related legal defense matters may be interested in reviewing a comprehensive legal article on the topic is "Automatism or Unconsciousness as Defense to Criminal Charge," Eunice A. Eichelberger, J.D., 27 A.L.R.4th 1067, © 1984 The Lawyers Co-operative Publishing Company, © 2005 West Group -Updated January 2005. As stated in the article, it "collects and analyzes the criminal cases in which the courts have considered the defense of unconsciousness or automatism or other defense based on the defendant's claim that at the time of the crime he was unconscious or in an automatistic state or was subject to a physical state, such as an epileptic seizure, which ordinarily entails a loss, however temporary, of consciousness." For additional legal resources, see Weinberg, C.D., "Epilepsy and the Alternatives for a Criminal Defense," 27 Case W. L. Rev. 771 (1977).

The following book contains chapters on an alleged connection between various neurological disorders, including epilepsy, and violent behaviors: Riley, T. and Roy, A.,

<u>Pseudoseizures</u>, Williams & Wilkins, Baltimore (1982). Other articles that may be of interest include: L. Marsh & G. L. Krauss, "Aggression and Violence in Patients with Epilepsy," <u>Epilepsy & Behavior</u>, Vol 1, pages 160-168 (2000); Stevens, J. R. & Hermann, B., "Temporal Lobe Epilepsy, Psychopathology and Violence: The State of the Evidence," <u>Neurology</u>, Vol. 31, pages 1127-1132 (September 1981); Hermann, B., et al., "Interictal Psychopathology in Patients with Ictal Fear: A Quantitative Investigation," <u>Neurology</u>, Vol. 32, pages 7-11 (January 1982); Letters to the Editor, <u>Neurology</u>, Vol. 32, pages 574-575 (May 1982); Treiman, D. & Delgado-Escueta, A., "Violence and Epilepsy - A Critical Review," <u>Recent Advances in Epilepsy</u>, Churchill Livingstone (1983); Treiman, D., "Epilepsy and Violence: Medical and Legal Issues," <u>Epilepsia</u>, Vol. 27 (Suppl. 2) S77-S104 (1986); Perlin, "Unpacking the Myths: The Symbolism Mythology of Insanity Defense Jurisprudence," 40 Case Western L. Rev. 599 (1989-1990); Corrado, "Automatism and the Theory of Action," 39 Emory L.J. 1191 (1990).